IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOY MORALES,

    Plaintiff,

v.                                                                Civ. No. 18-130 SCY/KK

CITY OF HOBBS;
HOBBS POLICE DEPARTMENT POLICE CHIEF
CHRIS McCALL, *in his official capacity*;
JAYSON WILLIAM HOFF; DOROTHY
APODACA, *in her official capacity*;
JOHN DOES 1 THROUGH 4; and JOHN
DOES A THROUGH D,

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

    THIS MATTER comes before the Court on Defendants' Motion to Dismiss for Failure to State a Claim. Doc. 5. In the Motion, Defendants' contend that (a) Officer Jayson Hoff is entitled to qualified immunity because Plaintiff has not stated a plausible claim that he violated any of her constitutional rights; (b) Plaintiff's Section 1983 claims against Police Chief Chris McCall, Dorothy Apodaca, and the Hobbs Police Department should be dismissed because Plaintiff's claims against the City of Hobbs render these claims redundant; (c) Plaintiff has not stated a viable *Monell* claim against the City of Hobbs; (d) Plaintiff failed to state viable state law claims against Defendant Hoff; and (e) Plaintiff's state law claims against the City of Hobbs, Hobbs Police Department, Police Chief Chris McCall, and Dorothy Apodaca should be dismissed because Plaintiff's claims sound in negligence and the New Mexico Tort Claims Act does not waive immunity for negligence. For the reasons stated below, the Court will GRANT Defendants' Motion. However, because the Court will grant Plaintiff leave to amend her complaint, the dismissal of Plaintiff's claims will be without prejudice.

## I. LEGAL STANDARDS

Rule 12(b)(6) allows for the dismissal of a complaint where the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (internal citation omitted). In considering dismissal under Rule 12(b)(6), the Court will "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Generally, a district court can consider outside materials only by converting a 12(b)(6) motion to dismiss to a motion for summary judgment. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005). But conversion is unnecessary when the documents are referenced in the complaint and their authenticity is unchallenged. *Id.* at 1253-54.

A complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "In determining the plausibility of a claim, we look to the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard [does not] require a plaintiff to set forth a prima facie case for each element. The nature and specificity of the allegations required to state a plausible claim will vary based on context. But mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (internal quotation marks and citations omitted). "Thus, a claim is

facially plausible if the plaintiff has pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## II. BACKGROUND

The Court takes the following allegations from Plaintiff's First Amended Complaint as true for purposes of this decision. On February 27, 2014, a woman now known to be Devanne Archibeque was arrested by Arizona Department of Public Safety Officer Douglas Redig for aggravated DUI while traveling on Interstate 40 through Arizona. *Plaintiff's First Amended Complaint*, Doc. 1-2, P. 16. Archibeque did not have identification on her at the time of her arrest and the vehicle she was driving was registered to a different individual. *Id.* P. 18. At the time of her arrest Archibeque had an active warrant for her arrest signed by Bernalillo County Metropolitan Court Judge Daniel Ramzcyk. *Id.* P. 17. Perhaps owing to her active arrest warrant, Archibeque represented to Officer Redig that her name was "Joy Morales" and provided Plaintiff's correct date of birth. *Id.* at 22. Upon investigation of the information provided, Officer Redig determined that Joy Morales' driver's license was suspended. *Id.* 23. Officer Redig arrested Archibeque and transported her to the Yavapai County Jail where she was fingerprinted and booked. *Id.* P. 24. However, no further identifying information was obtained and charges were filed against Joy Morales. *Id.* P. 24-25.

Archibeque was released from jail two days later. *Id.* P. 25. Although the charges against Joy Morales were initially dismissed, they were refiled in April of 2015. *Id.* P. 26. Plaintiff, obviously unaware of the charges, failed to appear in court and a bench warrant (Arizona Warrant) was issued for her arrest. P. 27.

This was not the first time an arrest warrant had been issued in Plaintiff's name for an offense allegedly committed by another person. On February 10, 2014, Plaintiff reported to law

3

enforcement authorities in New Mexico that someone had stolen her identity and apparently received a traffic citation which led to a warrant in Plaintiff's name. *Id.* P. 38. On July 7, 2014, Plaintiff was arrested pursuant to that warrant. *Id.* P. 39. The alleged traffic citation underlying the warrant had been issued in approximately December 2013. *Id.* P. 39. Due to the arrest, Plaintiff was fingerprinted and identified through standard booking procedures. *Id.* P. 39. On August 14, 2014, the criminal complaint was dismissed by Bernalillo County Metropolitan Court Judge Edward Benavidez because he recognized that Plaintiff was not the individual initially cited for the traffic violation. *Id.* P 40.

In August 2015, Plaintiff was again arrested but this time based on the Arizona Warrant. *Id.* P41. A fugitive complaint was filed against her in Valencia County, New Mexico. *Id.* In October 2015, however, Plaintiff was released and Magistrate Judge Tina Garcia dismissed the fugitive complaint due to the identity theft issue. *Id.*

More pertinent to the matter at hand, on November 20, 2015, Plaintiff was pulled over by Officer Jayson Hoff of the Hobbs Police Department for failing to come to a complete stop at a stop sign. *Id.* P. 42. During a routine background check, Officer Hoff discovered the still active Arizona Warrant against Plaintiff. *Id.* P 43. Officer Hoff accordingly arrested Plaintiff and transported her to the Hobbs Detention Center. *Id.* Plaintiff protested the arrest and notified Officer Hoff that her identity had been stolen. *Id.* 44. Plaintiff further protested her arrest while being booked into the Hobbs Detention Center. *Id.* 46. Plaintiff requested that law enforcement personnel compare the arrest records, including fingerprints and booking photos, to verify her claims. *Id.* 46.

The same day of Plaintiff's arrest, Officer Hoff swore a fugitive complaint against Plaintiff. *Id* 47. The fugitive complaint was filed in Lea County Magistrate Court on November

23, 2015. *Id.* 48. Plaintiff was also arraigned on November 23, 2015 and denied that she was subject to extradition pursuant to the Arizona Warrant. *Id.* 49. At her arraignment, Plaintiff again requested that authorities compare her records to verify her claims of mistaken identity. *Id.* 49. The magistrate judge instead remanded Plaintiff to the custody of the Lea County Detention Center (LCDC). *Id.* 49.

While at LCDC, Plaintiff was fingerprinted twice and these fingerprints were sent to Arizona for verification. *Id.* 50-51. Defendants, however, did not obtain verification that the fingerprints of the person arrested in Arizona matched Plaintiff. *Id.* 50-51. Throughout her incarceration at LCDC, Plaintiff issued multiple Inmate Request Forms requesting that LCDC investigate her claim of mistaken identity. *Id.* 52-56. Plaintiff's family also contacted authorities in Lea County concerning the issue and included supporting documentation with their correspondence. *Id.* 59.

On December 8, 2015, Plaintiff was appointed a public defender but did not have any contact with her public defender until December 23, 2015, the date of the status conference in regard to the fugitive complaint. *Id.* 57-58. At the status conference, Plaintiff again raised the issue her mistaken identity. *Id.* 61. Plaintiff alleges, however, that she was pressured to accept extradition and ultimately did so at the status conference. *Id* 62. On December 31, 2015, Plaintiff was transported to the airport and transferred to Arizona. *Id.* 66.

On January 7, 2016, a comparison of Plaintiff's booking information and fingerprints were conducted, which verified her complaints of misidentification. *Id* 68. Accordingly, the charges against Plaintiff were dismissed and Plaintiff was released from custody that day. *Id.* 69. In total, Plaintiff was held in custody at the Hobbs Detention Center and LCDC from November

20, 2015, through December 31, 2015, a period of approximately 42 days, and at Yavapai County from December 31, 2015, until January 7, 2016, a period of seven days. *Id* 70-71.

### III.   ANALYSIS

#### A.   Officer Hoff is Entitled to Qualified Immunity

Defendant Officer Hoff seeks dismissal of Plaintiff's Section 1983 claims for unlawful seizure and malicious prosecution on the basis of qualified immunity. "Qualified immunity is designed to shield public officials from liability and ensure that 'erroneous suits do not even go to trial.'" *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). In addition, qualified immunity is designed to prevent government officials from facing other burdens of litigation. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009).  The Supreme Court "has directed the lower federal courts to apply qualified immunity broadly, to protect from civil liability for damages all officers 'except the plainly incompetent or those who knowingly violate the law,'" so that officers "might not be unduly 'inhibit[ed]…in performing their official duties.'" *Wilson v. City of Lafayette*, 510 Fed. App'x 775, 780 (10th Cir. 2013) (unpublished) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001)).

To survive a motion to dismiss based on a claim of qualified immunity, the plaintiff bears a "heavy two-part burden." *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right." *Id.* "Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id.* The "'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Albright*, 51 F.3d 1535 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A plaintiff can carry this burden of showing that a right is clearly

6

established by citing Supreme Court or Tenth Circuit cases on point, or by demonstrating that the weight of authority from other circuits shows the right to be clearly established. *Archuleta*, 523 F.3d at 1283; *Albright*, 51 F.3d at 1535. If the plaintiff fails to carry either part of this two-step burden, the defendant is entitled to qualified immunity. *Archuleta*, 523 F.3d at 1283. If the complaint fails to properly allege a violation of a constitutional or statutory right, the court need not reach the question of whether the law was "clearly established." *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003).

Defendants contend that Plaintiff has failed to allege a constitutional violation in regard to Defendant Hoff's arrest and detention of Plaintiff. In the interest of clarity, the Court separates the parties' arguments into two broad inquiries. First, the Court will address the parties' arguments regarding whether the arrest warrant, which was in Plaintiff's name and contained her date of birth but was, in fact, intended for a different person, provided Defendant Hoff probable cause to arrest Plaintiff. Second, the Court will address whether Defendant Hoff had a duty to investigate Plaintiff's claims of mistaken identity. The Court addresses these issues in turn.

The Court begins with Defendant Hoff's arrest of Plaintiff. The Court notes that there is no dispute that the Arizona Warrant was still active at the time of Plaintiff's arrest. Further, it is beyond dispute that an individual has a constitutional right not be arrested unless there is probable cause for his or her arrest. "[P]robable cause exists only if, in the totality of the circumstances, the facts available to the officers at the moment of the arrest would warrant a [person] of reasonable caution in the belief that an offense has been committed." *Maresca v. Bernalillo Co.*, 804 F.3d 1301, 1308 (10th Cir. 2015) (internal quotation marks and citation omitted)). An arrest warrant must be based on probable cause. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (stating that "the Fourth Amendment requires that arrest warrants be based upon

7

probable cause"). Thus, "[a]n arrest warrant provides probable cause for a police officer to arrest an individual, and 'unless a warrant is facially invalid[,] an officer has no constitutional duty to independently determine its validity." *Armijo v. Santa Fe Cnty*, Civ. No. 17-574, 2018 WL 3118290, *12 (D.N.M. June 25, 2018) (citing *Hill v. Bogans*, 735 F.3d 391, 393 (10th Cir. 1984)).

In cases of mistaken identity arrest, the arrest does not violate the Fourth Amendment if the officer's mistake as to identity was reasonable under the circumstances facing the officer at the time of the arrest. *Hill v. California*, 401 U.S. 797 (1971); *Bencomo v. Bd. of Cnty Comm'rs of Cnty of Bernalillo*, Civ. No. 14-1114, 2016 WL 10590451, *5 (D.N.M. March 31, 2016) (discussing cases regarding mistaken identity arrests). The Court finds the Seventh Circuit's two-prong test articulated in *Catlin v. City of Wheaton*, 574 F.3d 361, 365 (7th Cir. 2009), a helpful framework for addressing the circumstances in this case. There, the court stated that "[w]hen police officers mistake a person for someone they seek to arrest, the arrest is constitutional if the officers (1) have probable cause to arrest the person sought, and (2) reasonably believe that the person arrested is the person sought." *Id.* (citing *Hill*, 401 U.S. at 802).

Under the first prong, the Court understands the parties' dispute to be whether Plaintiff alleged sufficient facts indicating that the Arizona Warrant was facially invalid such that Defendant Hoff did not have probable cause to effectuate Plaintiff's arrest. In contending that the Arizona Warrant was facially invalid, Plaintiff highlights allegations in her Complaint that the Arizona authorities issued the warrant after obtaining only the name and date of birth of Joy Morales but no further identifying information. Doc. 17 at 7 (citing Doc. 1-2 at ¶¶ 22, 24). Plaintiff further highlights allegations that she and Devanne Archibeque have readily distinguishable physical characteristics, especially given Archibeque's arrest record. Doc. 1-2 at

¶¶ 34, 35, and 37. Lastly, Plaintiff emphasizes allegations that the Arizona Warrant did not provide "probable cause or legal justification to effectuate Plaintiff's arrest" (Doc. 1-2 at ¶ 95), was erroneously obtained (Doc. 1-2 at ¶ 96), "wrongful" (Doc 1-2 at ¶ 97), and did not have Plaintiff as its proper subject (Doc. 1-2 at ¶ 101). Thus, Plaintiff contends that Defendant Hoff "did not have probable cause to believe that Plaintiff had committed any offense that would properly subject her to arrest or extradition" (Doc. 1-2 at ¶ 100) and Defendant Hoff accordingly violated her constitutional rights in arresting her.

As an initial matter, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. That is, allegations that the arrest warrant was without probable cause or legal justification (Doc. 1-2 at ¶ 95), was "erroneously obtained" (Doc. 1-2 at ¶ 96), and "wrongful" (Doc 1-2 at ¶ 97), by themselves, state no more than legal conclusions and are not entitled to any special deference. Setting those allegations aside, the Court will address Plaintiff's remaining allegations which she contends demonstrate the facial invalidity of the arrest warrant and thereby negate probable cause for the arrest.

First, Plaintiff alleges that the Arizona authorities issued the warrant only on the basis of Plaintiff's name and date and birth but no further identifying information. Plaintiff relies on *West v. Cabell*, 153 U.S. 78, 85 for the proposition that an arrest warrant "must truly name [the subject] or describe him sufficiently to identify him." Plaintiff further contends that pursuant to *Powe v. City of Chicago*, 664 F.2d 639, 646 (7th Cir. 1981), an arrest warrant containing an incorrect name is invalid under the Fourth Amendment. Taking these authorities together, the Court understands Plaintiff's argument to be that because in retrospect the warrant did not include the correct name of the actual offender, the warrant should have included further

identifying information. Because it did not, Plaintiff argues that it was facially invalid and Defendant Hoff's arrest of Plaintiff was accordingly without probable cause. *See* Doc. 17 at 7-8.

The Court finds Plaintiff's authorities distinguishable. As noted above, in determining the lawfulness of the officer's actions, the Court looks to what the officer knew at the time and whether it was reasonable to believe that the person arrested was the person sought. *See Hill*, 401 U.S. 797; *Catlin*, 574 F.3d at 365. The distinction between *Powe* and this case, however, is that the arrest warrant in *Powe* contained the name of the plaintiff and an alias "Ernest Brooks" who was the correct target of the warrant. 664 F.2d at 642. Relying on *West*, the *Powe* court held that that the plaintiff stated a claim for unlawful detention because the law enforcement authorities were uncertain of the suspect's true identity and accordingly were obligated, under the particularity requirement of the Fourth Amendment, to provide a description sufficient to identify him. *Id* at 647. As the *Powe* court clarified, "We do not hold that every arrest is necessarily invalid whenever it incorrectly names the intended arrestee and contains no other description of him. A case may be hypothesized in which the authorities responsible for preparing the warrant have good reason to believe that the name on the warrant is the real name of the intended arrestee, and have no reason to suspect otherwise." *Id.*

Turning to the present case, the Court first notes that Defendant Hoff had no hand in the arrest of Archibeque or the ultimate issuance of the Arizona Warrant in Plaintiff's name. As such, there is no basis from which to infer that he would have any foreknowledge of any of its alleged deficiencies. *See Jones v. Hacker*, Civ. No. 13-444, 2015 WL 1279363, *6 (D. Okla. March 20, 2015) (stating that because the warrant was not issued by the defendants, they could not be held accountable for the warrant's lack of sufficient identifying information). Furthermore, there is no allegation that the Arizona Warrant contained an alias or any other such

10

uncertainty as to the named individual *on its face*. Thus, there was nothing to indicate to Defendant Hoff that warrant was facially invalid because it failed to include further identifying information. To clarify, under *Powe* and *Cabell* it is not the fact that it is later determined that the named suspect is incorrect that triggers the necessity of identifying information. It is instead the uncertainty present on the face of the warrant, or, in some circumstances, at the time of its issuance, that necessitates the inclusion of additional identifying information. *See id.* at 646-47 (stating that the duty to include additional identifying information arises in situations in which "law enforcement authorities had probable cause to suspect a particular person of committing a crime, but did not know his name, or were uncertain of his name."). Stated another way, it is not facially apparent to an arresting officer who took no part in the preparation of a warrant that a warrant that does not include identifying information is deficient. There is simply no allegation from which the Court could infer that any alleged uncertainty as to the identity of the individual named in the arrest warrant was known by Defendant Hoff at the time of Plaintiff's arrest. Thus, the Court rejects Plaintiff's contention that an inference can be drawn from her allegations that the arrest warrant was facially invalid.

For similar reasons, the Court rejects Plaintiff's contention that her allegations regarding the alleged physical disparities between Plaintiff and Archibeque rendered the arrest warrant facially invalid. As just discussed, because Plaintiff argued that the warrant was facially invalid for not including identifying information, it follows that any alleged discrepancies in Plaintiff's and Archibeque's appearance would not be on the face of the warrant and therefore apparent to Defendant Hoff at the time of the arrest. There is therefore no basis to infer that Defendant Hoff was in a position to compare Plaintiff appearance with the physical description of Archibeque.

Accordingly, this allegation cannot support the contention that Defendant Hoff should have questioned the facial validity of the warrant.

In sum, the Court agrees with Defendant that Plaintiff failed to allege facts that Defendant Hoff relied on a facially invalid arrest warrant in arresting Plaintiff. The fact that another individual was ultimately the intended target of the Arizona Warrant is simply not enough to render it facially invalid. *See Moss v. Kopp*, 559 F.3d 1155 (10th Cir. 2009) (stating that "'facially valid' does not mean 'lawful,' and erroneous orders can be valid."). Given that the arrest was pursuant to a facially valid arrest warrant and the arrest warrant contained both Plaintiff's name and her date of birth, it was reasonable, under the second prong in *Catlin*, for Defendant Hoff to believe that Plaintiff was the person sought in the warrant and to then arrest her. *See Villanueva v. Roosevelt Cnty Detention Center*, Civ. No. 11-769, 2012 WL 13081446, *2 (D. N.M. Feb. 23, 2012) (stating that "an officer is entitled to rely on a facially valid warrant in making a probable cause determination—even if that warrant proves in the end to be invalid—and that no Fourth Amendment violation occurs in such circumstances."). But, as noted above, that does not end the Court's inquiry because Plaintiff also contends that Defendant Hoff had an obligation to investigate her claims of mistaken identity when she protested her arrest.

Having determined that Defendant Hoff had probable cause to effectuate Plaintiff's arrest, the Court turns to Plaintiff's contention that Defendant had an obligation to investigate her claims of mistaken identity. The Court considers this contention in both pre- and post-arrest contexts. In the pre-arrest context, the Tenth Circuit has held that an officer making an arrest pursuant to a facially valid warrant has no duty to investigate the validity of the warrant when the individual protests its validity. *See Hill v. Bogans*, 735 F.2d 391, 393 (10th Cir. 1984) (rejecting argument that the officer violated the plaintiff's civil rights when he failed to check the validity

12

of a warrant after being requested to do so and holding that "[u]nless a warrant is facially invalid an officer has no constitutional duty to independently determine its validity."); *Smyth v. City of Lakewood*, 83 F.3d 433, 1996 WL 194715, *4 (10th Cir. (1996) (unpublished) ("The officer is not required by the Fourth Amendment to obtain a copy of the warrant, research supporting documentation, or go behind the facial validity of a warrant before making the arrest."). District courts in this circuit have applied this holding in cases of mistaken identity arrests. *See Echols v. Unified Government of Wyandotte Cnty*, 399 F.Supp.2d 1201, 1206 (holding that under Tenth Circuit law, there was no constitutional violation in case of mistaken identity arrest because "a police officer has no duty to investigate a detained prisoner's claim of innocence if the prisoner was arrested on a facially valid warrant."); *Jones*, 2015 WL 1279363, *6 (holding that the police officers did not have an obligation to investigate the plaintiff's claims of mistaken identity). Accordingly, despite Plaintiff's protests of mistaken identity, Defendant Hoff had no duty to investigate her claims of mistaken identity before effectuating her arrest.

Plaintiff's arrest aside, the Court understands the substance of Plaintiff's Section 1983 claim for malicious prosecution against Defendant Hoff to be his failure to conduct a reasonable *post-arrest* investigation of her claims of mistaken identity. "To establish a malicious prosecution claim under § 1983, a plaintiff must prove that the defendant initiated or continued a proceeding against him [or her] without probable cause." *Chavez v. County of Bernalillo*, 3 F.Supp.3d 936, 982 (D.N.M. 2014) (citing *Becker v. Kroll*, 494 F.3d 904, 913-14 (10th Cir. 2007). Plaintiff asserts no other specific allegations against Defendant Hoff other than he failed to investigate her claims of mistaken identity. But such an alleged duty is foreclosed by *Baker v. McCollan*, 443 U.S. 137 (1979).

In *Baker*, the plaintiff was arrested pursuant to a warrant in his name but intended for his brother who had falsely identified himself when arrested. *Id*. at 140-41. The plaintiff protested his arrest on the basis of mistaken identity and, after three days, was released when officials compared his appearance to a booking photo of the his brother. *Id.* at 141. The plaintiff subsequently brought a Section 1983 claim against the county sheriff for the "intentional failure to investigate and determine that the wrong man was imprisoned," which the Court characterized as a false imprisonment claim. *Id.* at 137, 143. The United States Supreme Court held, however, that an officer executing a facially valid arrest warrant is not "required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as a lack of requisite intent….The ultimate determination of such claims of innocence is placed in the hands of the judge and jury." *Id.* at 145-46.

Even assuming such a duty could be said to exist in some circumstances, pursuant to the Tenth Circuit's decision in *Romero v. Fay*, 45 F.3d 1472 (10th Cir. 1995), Plaintiff has failed to state a claim against Defendant Hoff. The plaintiff in *Romero* brought a Section 1983 claim for an unreasonable post-arrest investigation. The court stated that in order to succeed on such a claim, the plaintiff "must assert facts that, at a minimum, demonstrate [the defendants] acted with deliberate or reckless intent." *Id.* at 1478. Conduct that amounts to a negligent post-arrest investigation will not suffice. *Id.* This standard similarly applies to claims of false imprisonment under Section 1983. *See id.* at 1480 ("a plaintiff states a claim for false imprisonment in violation of § 1983 by specifically alleging facts that show a government official acted with deliberate or reckless intent to falsely imprison the plaintiff."). Although Plaintiff alleges intentional and willful conduct by Plaintiff as part of her recitation of the legal standards, the factual allegations supporting Plaintiff's claims state no more than negligent conduct. *See Reyes v. Bd. of Cnty*

14

*Comm'rs of Cnty of Arapahoe*, Civ. No. 06-2319, 2008 WL 961565, * (D. Co. April 8, 2008) (concluding that where the plaintiff was mistakenly arrested that"[w]hile further investigation, such as fingerprint comparison, might have revealed the error, the employees were under no affirmative duty to conduct such an investigation"); *Armijo*, 2018 WL 3118290, *13 (concluding that the plaintiff failed to state a claim of unreasonable post-arrest investigation where the officer failed to investigate discrepancy in arrestee's name compared to the warrant because the officer's conduct was merely negligent);

### B. Claims Against Chief McCall, Administrator Apodaca, and the Hobbs Police Department

Defendant contends that Plaintiff's Section 1983 claims against Chief McCall and Administrator Apodaca should be dismissed because Plaintiff's claims against them are redundant of her claims against the City of Hobbs. As the Court has recognized before, "where a plaintiff chooses to sue both the municipality and municipal official in an official capacity, courts consistently dismiss the official capacity claim as 'duplicative' or 'redundant' of the claim against the municipal entity." *N.F. on behalf of M.F. v. Albuquerque Public Schools*, Civ. No. 14-699 SCY/SMV, 2015 WL 13662805, *2 (D.N.M. May 4, 2015) (citing *McDonald v. Wise*, 769 F.3d 1202, 1214-15 (10th Cir. 2014)). In response, Plaintiff merely contends that such dismissal would be "premature" but provides no further reasoning. Accordingly, because Plaintiff is suing Chief McCall and Administrator Apodaca in their official capacities and is also suing the City of Hobbs, the Court will dismiss Plaintiff's Section 1983 claims against Chief McCall and Administrator Apodaca.

As for the Hobbs Police Department, Plaintiff represents that no claims against the Hobbs Police Department are asserted in her Complaint and it is therefore not necessary to dismiss this

entity. Doc. 17 at 9. Given that Plaintiff has not made a claim against the Hobbs' Police Department, the Court finds Defendant's contention on this point moot.

### C. Plaintiff's Municipal and Supervisory Liability Claims under Section 1983

Plaintiff asserts three Section 1983 claims against the City of Hobbs: unlawful seizure (Count IV); malicious prosecution (V); and supervisory liability (VI). The Court understands these claims to be premised on Defendant Hoff's allegedly unconstitutional arrest of Plaintiff. However, "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood, Kansas*, 997 F.2d 774, 782 (10th Cir. 1993); *Myers v. Oklahoma Co. Bd. of Cnty Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) ("It is well established, therefore, that a municipality cannot be liable under Section 1983 for the acts of an employee who committed no constitutional violation."). Thus, because the Court concludes that Defendant Hoff did not violate Plaintiff's constitutional rights, the Court will likewise grant Defendant's Motion to Dismiss as to these claims against the City of Hobbs.

### D. State Law Claims Against Defendants

Plaintiff asserts three state law claims against Defendant Hoff, the City of Hobbs, Police Chief McCall, and Administrator Apodaca: negligence (Count I); false imprisonment (Count II); and Malicious Prosecution (Count III). Doc. 1-2 at 16-17. Defendant argues that these claims are foreclosed by the New Mexico Tort Claims Act (NMTCA), NMSA 1978, § 41-4-4 and the New Mexico Court of Appeals decision in *Dickson v. City of Clovis*, 2010-NMCA-058, 242 P.3d 398. The NMTCA grants public employees immunity from tort actions "except as waived by the New Mexico Religious Freedom Restoration Act and by Sections 41-4-5 through 41-4-12." NMSA 1978, § 41-4-4. Under Section 41-4-12, this immunity does not apply to the liability of law enforcement officers "for personal injury, bodily injury, wrongful death, or property damage

16

resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico" when they are acting within the scope of their duties.

In *Dickson*, the plaintiff was arrested following a traffic stop for being a felon in possession of a firearm. *Id.* at ¶ 1. During the traffic stop, the officer noticed the firearm in the vehicle. *Id.* at ¶ 2. The officer radioed dispatch and was informed that the plaintiff was a felon. *Id.* The officer questioned the plaintiff regarding this fact but the plaintiff produced documentation that he had received a deferred conviction on the underlying charge. *Id.* The officer reviewed the document but was unsure of its authenticity and accordingly arrested the plaintiff. *Id.* The plaintiff's charges were ultimately dismissed and he brought suit against the City of Clovis and the officer. The trial court ultimately dismissed plaintiff's state law claims of negligence, false imprisonment, malicious prosecution, assault and battery, and wrongful arrest. *Id.* ¶ 17.

On appeal, the New Mexico Court of Appeals affirmed the trial court's dismissal of plaintiff's state law claims. As for the negligence claim, in which Plaintiff alleged that the officer negligently failed to investigate the validity of the felony conviction, the Court stated that "it is well established in New Mexico that 41-4-12 immunity is not waived in an action for negligence standing alone." *Id.* at ¶ 19. Instead, the alleged negligence must have caused an enumerated tort or violation of rights in order to overcome the officer's immunity. *Id*. at ¶ 18. *Dickson* further indicates that the officer's negligence "allegedly caused a third party to commit one of the enumerated intentional acts." *Id.* at ¶ 20. Because the plaintiff did not specify an enumerated tort in his negligence claim or allege that such negligence caused a third party to

17

commit any intentional tort, the Court dismissed this claim. *Id.* at ¶¶ 19-20. As for the plaintiff's remaining state law claims, the court stated that these claims presupposed that the officer did not have probable cause to arrest the plaintiff. Because the Court determined that the officer did have probable cause, the court upheld their dismissal. *Id* P. 21.

The Court agrees with Defendants that *Dickson* directs dismissal of Plaintiff's state law claims against these Defendants. Like the plaintiff's negligence claim in *Dickson*, Plaintiff appears to be asserting a stand-alone negligence claim against Defendants for their alleged failure to investigate her claims of innocence. Plaintiff contends, however, that she states a claim because she alleged that their negligence "caused injury to Plaintiff and damages as set forth herein." Doc. 17 at 13 (citing Doc. 1-2 ¶ 81). The Court concludes that this allegation is insufficient because it does not specify an enumerated tort under NMSA 1978, § 41-4-12, or allege that such negligence caused a third party to commit any intentional tort.

Furthermore, as the Court has previously determined, Plaintiff did not allege sufficient facts from which the Court could conclude that Defendant Hoff's probable cause to arrest plaintiff was negated by a facially invalid warrant. *Dickson* stands for the proposition that claims for false imprisonment and malicious prosecution are not viable where the plaintiff's arrest was based on probable cause. *See also Santillo v. N.M. Dept. of Public Safety*, 2007-NMCA-159, ¶ 12, 13, 173 P.3d 6 ("An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest"). Accordingly, like *Dickson*, Plaintiff failed to state a claim for false imprisonment and malicious prosecution because she failed to assert plausible facts that Defendants acted without probable cause. The Court accordingly will dismiss Plaintiff's state law claims against these Defendants.

18

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion and dismisses Plaintiff's Complaint without prejudice. Plaintiff shall have twenty-one days from the entry of this Order to file an amended complaint, if she so chooses.

_____
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**